UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RSM PRODUCTION CORP., JACK J. GRYNBERG, :
and GRYNBERG PETROLEUM COMPANY,         :
                                        :   06 Civ. 11512 (DLC)
                    Plaintiffs,         :
                                        :   OPINION AND ORDER
          -v-                           :
                                        :
MIKHAIL FRIDMAN, LEN BLAVATNIK, LEV     :
KORCHAGIN and GREGORY BOWEN,            :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Daniel L. Abrams
2 Pennsylvania Plaza, Suite 1910
New York, NY 10121

For Defendant Mikhail Fridman:
Robert H. Pees
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY  10022-2524


DENISE COTE, District Judge:

    Following a May 24, 2007 Memorandum Opinion and Order, RSM

Prod. Corp. v. Fridman, No. 06 Civ. 11512 (DLC), 2007 WL 1515068

(S.D.N.Y. May 24, 2007) ("May Opinion"),[1] granting in part

plaintiffs' motion for court-directed service of process upon

defendants Mikhail Fridman ("Fridman") and Lev Korchagin

---
[1] Familiarity with the May Opinion is assumed.

("Korchagin") pursuant to Rule 4(f)(3), Fed. R. Civ. P. ("Rule 4(f)(3)"),[2] defendant Fridman brings this timely motion for reconsideration under Rule 6.3 of the Local Rules of Civil Procedure for the Southern District of New York.  Fridman, a resident of the Russian Federation, seeks rescission of the Order granting permission to plaintiffs to serve him through his New York counsel.  For the reasons that follow, the motion is denied.

BACKGROUND

On November 1, 2006, the plaintiffs brought the instant action against the defendants for tortious interference with business relations and tortious interference with a contract relating to the exploration and development of natural resources off the shore of Grenada.  Defendant Fridman is the founder and chairman of the Alfa Group, a business conglomerate with significant interests in, among other things, the oil, banking, and telecommunications industries in the Russian Federation. OAO Alfa Bank v. Ctr. for Pub. Integrity, 387 F. Supp. 2d 20, 25 (D.D.C. 2005).  Plaintiffs filed an Affidavit of Service on February 28, indicating that on February 21, Fridman was served

---

[2] Rule 4(f)(3) provides that service "may be effected in a place not within any judicial district of the United States . . . by . . . means not prohibited by international agreement as may be directed by the court."  Rule 4(f)(3), Fed. R. Civ. P.

through personal delivery of the case initiation documents to a suitable person at ALFA Capital Markets, a business located in New York and purportedly affiliated with Fridman.  On March 13, Robert Pees ("Pees") entered a Notice of Appearance in this case on behalf of Fridman.  That same day, Fridman moved to dismiss the complaint pursuant to Rules 4, 12(b)(2) and 12(b)(5), Fed. R. Civ. P., on the grounds that this service attempt was improper.  Pursuant to a stipulation between the plaintiffs and Fridman, this Court struck both the February 28 Affidavit of Service and Fridman's motion to dismiss on April 5.

After plaintiffs moved on May 9 for court-directed alternate service of process on Fridman, the May Opinion granted plaintiffs permission to effect service through hand delivery of the relevant documents to Pees, Fridman's United States counsel, at the New York offices of Akin Gump Strauss Hauer and Feld LLP ("Akin Gump"), pursuant to Rule 4(f)(3).  On May 25, the day after the May Opinion was issued, Fridman's counsel requested permission to file opposition papers to plaintiffs' motion for court-directed service.  That same day, this Court ordered the submission of any opposition to the May Opinion in the form of a motion for reconsideration.[3]  Defendant Fridman moved for

---

[3] Fridman contends that he intended to respond to plaintiff's May 9 motion for alternate service within the ten days allowed by the Southern District of New York's Local Rule 6.1.(b) and Rules 5(b)(2)(D) and 6(e), Fed. R. of Civ. P.  The May 9 motion was

reconsideration on May 29 and the motion was fully submitted on June 15.


A.   Fridman's Suit in the District of Columbia

     The relationship between Fridman and Akin Gump began years before Pees' notice of appearance in the instant litigation. From 2000 to 2006, Daniel Joseph and Tobias Eli Zimmerman of Akin Gump's Washington D.C. office represented Fridman as a plaintiff.  On September 14, 2000, Fridman and his co-plaintiffs brought a defamation suit in the District of Columbia against a non-profit organization and its reporters for publishing an article alleging that the plaintiffs had connections to organized crime and had engaged in narcotics trafficking.  See OAO Alfa Bank, 387 F. Supp. 2d. 20.  This litigation concluded last year with a grant of summary judgment for the defendants. Id. at 23.[4]

_____

decided on the basis of plaintiff's submissions because the Court was unaware that Fridman intended to oppose the application.

[4] Plaintiffs claim that Fridman has also been affiliated with other litigation in United States federal court including Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146 (2d Cir. 2005), in which Akin Gump attorneys defended Alfa Group. Fridman was not, however, an individual defendant in Norex.  He is a named defendant represented by attorneys from Akin Gump's Washington D.C. office in IPOC Int'l Growth Fund, Ltd. v. Rozhektskin, 06 Civ. 4338 (VM), a case pending before the Honorable Victor Marrero of this Court, but has not been served in that case.

B. The May Opinion

   The May Opinion held that court-directed service pursuant
to Rule 4(f)(3) on defendant Fridman was warranted because
plaintiffs had shown that they were unable to serve him in the
Russian Federation pursuant to procedures set forth by the Hague
Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, [1969]
20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Service Convention").
May Opinion, at *1.  It found that while "[s]ervice on a foreign
defendant pursuant to the [Hague Service Convention] is
mandatory when serving a defendant who resides in a foreign
country that is a signatory to the convention," the plaintiff
had submitted evidence showing that the Russian Federation's
Central Authority is no longer processing service requests from
the United States.  Id.  The May Opinion also found that
"[n]either the Hague Service Convention nor apparently any other
current international agreement between the [United States and
the Russian Federation] prohibits service on a defendant
residing in the Russian Federation through service on his
counsel in the United States," and that such service was
therefore permissible under Rule 4(f)(3).  Id. at *2.  Finding
that such service would also not violate constitutional
standards of due process, the May Opinion ordered service on
Fridman through personal delivery on Pees in New York.  Id.

C. Motion for Reconsideration

Fridman argues that the May Opinion erred for five main reasons.  His first three complaints concern the May Opinion's treatment of the Hague Service Convention.  Fridman argues that the May Opinion (1) expressed doubt as to the status of the Hague Service Convention, and thereby overlooked case law prohibiting courts from declaring that a treaty is not in force; (2) incorrectly relied on Forum Fin. Group, LLC v. President & Fellows of Harvard Coll., 199 F.R.D. 22 (D. Me. 2001), which was decided before Russia ratified the Hague Service Convention; and (3) incorrectly interpreted the Hague Service Convention to permit service on a defendant residing in the Russian Federation through his United States counsel, when such service is barred by the Russian Federation's objections to Articles 8 and 10 of the convention.  Fridman also complains that the May Opinion (4) did not acknowledge that Pees was not authorized to receive service on behalf of Fridman; and (5) contravened public policy by permitting service through counsel who appeared in the litigation for the sole purpose of contesting a previous attempt to serve the defendant.


DISCUSSION

The standard for a motion for reconsideration is strict, and "reconsideration will generally be denied unless the moving

party can point to controlling decisions or data that the court
overlooked -- matters, in other words, that might reasonably be
expected to alter the conclusion reached by the court." Shrader
v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Since
Fridman was not heard prior to the issuance of the May Opinion,
however, his arguments are granted due consideration here.


A. Hague Service Convention

    Two of Fridman's three criticisms of the May Opinion's
treatment of the Hague Service Convention fail to point to
controlling law or relevant data overlooked by the Court.
Fridman first argues that "to the extent that the [May Opinion]
expresses any doubt as to whether the Hague Convention is in
force between the United States and Russia, . . . it is clear
that these doubts are unfounded and non-justiciable."  The May
Opinion noted that the plaintiff failed to address the current
status of the Hague Service Convention.  May Opinion, at *1 n.1.
This observation, however, did not purport to declare that the
Hague Service Convention is no longer in force between the
United States and the Russian Federation, and in no way intrudes
on the political branches' role in dealing with the foreign
relations of the United States.  To the contrary, the May
Opinion evaluated plaintiffs' requests for court-directed

service with the understanding that the convention is currently
in force.

Fridman's criticism that the May Opinion incorrectly relied
on Forum Fin. Group similarly fails.  The May Opinion explicitly
acknowledged that this decision was issued before Russia joined
the Hague Service Convention.  May Opinion, at *2.  Forum Fin.
was offered to support the proposition that at the time of the
decision in 2001, no international agreement between the United
States and the Russian Federation prohibited service on a
defendant residing in the Russian Federation through service on
his United States counsel.  The only international agreement
that Fridman argues prohibits such service today is the Hague
Service Convention.  His criticism of this Court's reference to
Forum Fin. Group therefore reduces to his third complaint, that
the Hague Service Convention bars service upon a defendant
residing in the Russian Federation through United States counsel
due to the Russian Federation's objection to Articles 8 and 10
of the convention.

Fridman's third argument is unpersuasive.  The Hague
Service Convention does not prohibit an order pursuant to Rule
4(f)(3) permitting service through American counsel.  The text
of Rule 4(f)(3) limits a court's power to fashion a method of
service pursuant to the rule to any means "not prohibited by
international agreement."  The Supreme Court has clarified, "the

8

only transmittal to which the [Hague Service] Convention applies
is a transmittal abroad that is required as a necessary part of
service." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486
U.S. 694, 707 (1988) (emphasis supplied).  The Hague Service
Convention has "no further implications," therefore, "[w]here
service on a domestic agent is valid and complete under both
state law and the Due Process Clause." Id.  Foreign nationals
are assured under our nation's Due Process Clause "of either
personal service, which typically will require service abroad
and trigger the [Hague Service] Convention, or substituted
service that provides notice reasonably calculated, under all
the circumstances, to apprise interested parties of the pendency
of the action and afford them an opportunity to present their
objections." Id. at 705 (citation omitted); see also FMAC Loan
Receivables v. Dagra, 228 F.R.D. 531, 534 (E.D. Va. 2005)
(plaintiff's request for court-directed service on defendant
through counsel in the United States pursuant to Rule 4(f)(3)
did not implicate the convention because it involved no
transmittal of documents abroad).[5]  The Advisory Committee Notes

---

[5] The Statement in the May Opinion that "[s]ervice on a foreign
defendant pursuant to the [Hague Service Convention] is
'mandatory' when serving a defendant who resides in a foreign
country that is a signatory to the convention" is correct only
when service is effected on the foreign defendant by
transmitting documents abroad to the signatory nation in which
the defendant resides.  See May Opinion, at *1.

to the sweeping amendments of Rule 4(f) in 1993 plainly
contemplated alternative avenues of service when it noted that
if the Hague Service Convention procedures are unavailable to a
plaintiff, such as when a signatory state is "dilatory or
refuse[s] to cooperate for substantive reasons," court-directed
service pursuant to Rule 4(f)(3) may be available.  Fed. R. Civ.
P. 4(f)(1), advisory committee notes to the 1993 Amendment.  See
May Opinion, at *1.

Moreover, Fridman's reliance on Articles 8 and 10 of the
Hague Service Convention provide him with no comfort.  The
Russian Federation's objections to Articles 8 and 10 signify
only that the specific methods outlined in these provisions may
not be used when effecting service through transmittal of
judicial documents to a defendant in the Russian Federation.
The text of the objections themselves suggest this
interpretation.  The Russian Federation's objection to Article 8
states, "Pursuant to Article 8 of the Convention, diplomatic and
consular agents of foreign States are not permitted to effect
service of documents within the territory of the Russian
Federation, unless the document is to be served upon a national
of the State in which the documents originate."  Hague
Conference on Private International Law, Status Table, Hague
Service Convention, available at
http://www.hcch.net/index_en.php?act=conventions.statusprint&cid

=17 (emphasis supplied).  Similarly, its objection to Article 10

sets forth that "[s]ervice of documents by <u>methods listed in</u>

<u>Article 10 of the Convention</u> is not permitted in the Russian

Federation."  <u>Id.</u> (emphasis supplied).  Article 10 of the

convention permits service within the foreign country through

the following three methods, barring any objection by the

signatory state:

> (a) the freedom to send judicial documents, by postal
> channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other
> competent persons of the State of origin to effect service
> of judicial documents directly through the judicial
> officers, officials or other competent persons of the State
> of destination,
>
> (c) the freedom of any person interested in a judicial
> proceeding to effect service of judicial documents directly
> through the judicial officers, officials or other competent
> persons of the State of destination.

Hague Service Convention, art. 10.  Neither Article 8 nor 10

addresses service on a defendant in the Russian Federation

through alternate means in the forum state.  Therefore, even if

the Hague Service Convention applied, the Russian Federation's

objections to Articles 8 and 10 do not prohibit this Court from

granting plaintiffs permission to serve Fridman through Pees.

<u>Accord</u> David D. Siegel, Supplementary Practice Commentary C4-24,

28 U.S.C.A. Fed. R. Civ. P. 4, at 73 (West Supp. 2000) ("It is

only a method barred by 'international agreement,' and

presumably specifically barred by that agreement, that the court must stay away from.").

Thus, the May Opinion's direction remains appropriate.  The Supreme Court has explained that "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections."  Henderson v. United States, 517 U.S. 654, 672 (1996).  Fridman's counsel does not contest that his client has notice of the instant litigation or that his client would be unable, if properly served, to litigate his defense.  Indeed, such a contention would be suspect in light of Fridman's active litigation as a plaintiff in United States federal court.  "[N]o one form of substitute service is favored over any other," and in fashioning substituted service on a defendant located abroad, a court should consider the "necessities" of a particular case.  Int'l Controls Corp. v. Vesco, 593 F.2d 166, 176 (2d Cir. 1979) (commenting on the predecessor to Rule 4(f)(3), former Rule 4(i)(1)(E), which provided for service "as directed by order of the court" on a defendant located abroad).  In this case, where plaintiffs have been unable, despite diligent efforts, to serve the defendant in the Russian Federation according to Hague Service Convention procedures, substituted service on Fridman

through Pees accomplishes the goals of service while respecting the requirements of both due process and Rule 4(f)(3).

Fridman has failed to present controlling law or relevant facts that suggest a different conclusion.  His claim that "plaintiffs provide no basis for determining that service through Pees would comport with due process" other than "conclusory allegations that Mr. Fridman has 'actual notice' of this action," is unpersuasive.  Fridman does not deny that he has already received actual notice of this suit.  There is no reason, therefore, to conclude that service on Fridman through Pees would not provide him, as constitutional due process requires, "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." Luessenhop v. Clinton County, N.Y., 466 F.3d 259, 269 (2d Cir. 2006) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see, e.g., Salomon Bros. Inc. v. Huitong Int'l Trust & Inv. Corp., No. 94 Civ. 8559 (LAP), 1997 WL 324051, at *3 (S.D.N.Y. June 13, 1997) (defendants' actual notice provided "proper grounds" to permit substituted service through defendant's counsel in the United States).

Fridman's resort to Estate of Yaron Ungar v. Palestinian Auth., 412 F. Supp. 2d 328 (S.D.N.Y. 2006), and Shenouda v. Mehanna, 203 F.R.D. 166 (S.D.N.Y. 2001), for the proposition

that service may not be effected on him through means other than those set forth in the Hague Service Convention is similarly unconvincing.  In neither instance did a plaintiff request court-directed service pursuant to Rule 4(f)(3).

In reply on the instant motion, Fridman claims that plaintiffs may not seek substituted service upon him through his domestic counsel under Rule 4(f)(3) since service effected through a domestic agent must be made pursuant to Rule 4(e)(2), Fed. R. Civ. P. ("Rule 4(e)(2)").  An argument first raised in reply may be ignored.  ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., 485 F.3d 85, 97 n.12 (2d Cir. 2007).  In any event, Rule 4(e)(2), which permits service to be "effected in any judicial district of the United States" through "an agent authorized by appointment or by law," does not purport to be exclusive.  Rule 4(f)(3) permits service to be effected on Fridman "in a place not within any judicial district of the United States" through "means not prohibited by international agreement as may be directed by the court."  Rule 4(f)(3) does not limit these means to the foreign transmittal of documents.  Together, Rules 4(e) and 4(f) "provide[] for service on persons anywhere, subject to constitutional and statutory constraints."  Rule 4(e), advisory committee notes to the 1993 Amendment.

Finally, Fridman contends that substituted service is not warranted because he has not sought to evade service.  This

argument is also unpersuasive, however, since he has not identified any requirement that a plaintiff demonstrate evasion by a defendant located abroad in order to secure substituted service pursuant to Rule 4(f)(3).

Failing to identify any statutory or constitutional constraints on substituted service, Fridman has failed to show that reconsideration of the May Opinion is warranted. Substituted service on Pees is an appropriate means by which to serve Fridman within the requirements and circumstances of this particular case, where plaintiffs have been prevented from following Hague Service Convention procedures in the Russian Federation and the defendant not only has actual notice of the litigation, but has brought at least one lawsuit as a plaintiff in this country's federal courts.


B. Authorization to Accept Service

Fridman argues that service upon him through his attorney at Akin Gump would be improper because Pees is not his designated agent to receive service of process. "[S]ervice of process on an attorney not authorized to accept service for his client is ineffective." Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1094 (2d Cir. 1990). Fridman has failed, however, to provide controlling law demonstrating that in directing service pursuant to Rule 4(f)(3), a court may not

authorize an attorney in the appropriate circumstance to receive service of process on behalf of a client located abroad.  Court-ordered service on counsel made under Rule 4(f)(3) serves as effective authorization "by law" for counsel to receive service.

The cases cited by Fridman as authority for his position do not suggest otherwise, and indeed two support the substituted service ordered here.  In S.E.C. v. Unifund Sal, 910 F.2d 1028 (2d Cir. 1990), the Court of Appeals upheld service on a foreign defendant made through its American broker.  Id. at 1034.  In Levin v. Ruby Trading Corp., 248 F. Supp. 537 (S.D.N.Y. 1965), the Honorable Edward Weinfeld upheld substituted service on the foreign defendant through ordinary mail directed to the defendant as well as his attorneys in Canada and the United States.  Id. at 540.  Finally, neither of the remaining cases on which Fridman relies involved a request for substituted service pursuant to Rule 4(f)(3).  Turick v. Yamaha Motor Corp., USA, 121 F.R.D. 32 (S.D.N.Y. 1988); Gibbs v. Hawaiian Eugenia Corp., 581 F. Supp. 1269 (S.D.N.Y. 1984).


C. Public Policy Considerations

Fridman last argues that even if service upon him through Pees is permitted by law, as a matter of federal judicial policy, service of process pursuant to Rule 4(f)(3) through an attorney who has appeared only to challenge service of process

and jurisdiction should not be allowed.  It is unnecessary to

grapple with this last argument, since Akin Gump's relationship

with Fridman is well established and extends beyond any limited

appearance in this lawsuit.  Akin Gump has assisted Fridman for

years in pursuing litigation in another federal district court.

Court-directed service on Fridman through Akin Gump does not

contravene any federal judicial policy and Fridman has been

unable to point to any authority suggesting that it does.


CONCLUSION

        Defendant Fridman's motion for reconsideration is denied.


        SO ORDERED:

Dated:     New York, New York
           August 10, 2007

                                   _____
                                        DENISE COTE
                                   United States District Judge


17