UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RSM PRODUCTION CORP., JACK J. GRYNBERG, :
and GRYNBERG PETROLEUM COMPANY,         :
                                        :   06 Civ. 11512 (DLC)
                 Plaintiffs,            :
                                        :   OPINION AND ORDER
            -v-                         :
                                        :
MIKHAIL FRIDMAN, LEN BLAVATNIK, LEV     :
KORCHAGIN and GREGORY BOWEN,            :
                                        :
                 Defendants.            :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Daniel L. Abrams
2 Pennsylvania Plaza, Suite 1910
New York, NY 10121

For Defendant Len Blavatnik:
Turner P. Smith
Myles K. Bartley
Joshua L. Blosveren
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

DENISE COTE, District Judge:

    Plaintiffs Jack Grynberg ("Grynberg"), his Colorado

corporation Grynberg Petroleum Company ("Grynberg Petroleum"),

and RSM Production Corporation ("RSM"), a Texas company located

in Colorado with which Grynberg works on natural resource

exploration and development, bring this diversity action for

tortious interference with business relations and tortious

interference with a purported contract between RSM and the
nation-state of Grenada.  Defendant Len Blavatnik ("Blavatnik"),
a New York resident and member of the Board of Directors of the
Russian oil company TNK-BP, has moved to dismiss the complaint
pursuant to Rules 12(b)(6), 12(b)(7), and 19, Fed. R. Civ. P.
Blavatnik seeks dismissal of the plaintiffs' claims against him
on the following four grounds: (1) plaintiffs fail to allege
sufficient facts to state a claim, 2) the applicable two-year
statute of limitations bars the plaintiffs' tort claims, 3) the
principle of forum non conveniens counsels for dismissal of the
action and litigation in Grenada, and 4) plaintiffs fail to join
Grenada, an indispensable party.  In the event that the claims
against him are not dismissed, Blavatnik seeks a stay pending
the outcome of the arbitration of RSM's claims against Grenada
before the World Bank's International Centre for the Settlement
of Investment Disputes ("ICSID").

    For the following reasons, the motion to dismiss for
failure to state a claim is denied with leave to renew following
amendment of the complaint.  The motion to dismiss on the
grounds of statute of limitations and forum non conveniens is
denied, as is the request for a stay.  The defendant will be
permitted to refile his motion to dismiss for failure to join an
indispensable party after each of the motions to dismiss in this
action are resolved.

BACKGROUND

The following facts are as alleged by the plaintiffs in the complaint or their submissions in opposition to this motion. Grynberg is a Colorado resident and international business person.  On behalf of RSM and Grynberg Petroleum, he has conducted and invested in natural resource exploration off the shore of Grenada and surrounding areas since 1971.  In July 1996, RSM and Grenada signed an exclusive Petroleum Agreement ("Agreement").  The Agreement was supposed to result in a license to RSM to explore, develop, and produce oil and natural gas off the Grenadian coast.  After entering into the Agreement, RSM made further investments in geologic data related to conducting this work.

In September 1996, defendant Gregory Bowen ("Bowen"), Grenada's Minister of Agriculture, Lands, Forestry, Fisheries, Public Utilities and Energy, stated that he "expected significant bribe payments" from the plaintiffs in exchange for permission to conduct business with Grenada.  When plaintiffs refused, Bowen took adverse action against them by rescinding Grynberg's status as Special Envoy to Venezuela, refusing to participate in RSM's litigation before the International Court of Justice regarding the boundary dispute between Grenada and Trinidad and Tobago, granting permission to others seeking to perform seismic work in the area over which plaintiffs had

expected to secure an exclusive license, and "taking no steps to preserve Grenada's United Nations seismic data" despite Grynberg's offer "to preserve and reprocess" such data for free.

After corresponding with Bowen for several months in early 2004, RSM applied to the Grenadian Permanent Secretary of the Ministry of Finance on April 14, 2004, for an oil and natural gas exploration license. When RSM's agent met with Bowen regarding the company's application on April 20, Bowen indicated that the application was deficient because it did not contain audited financial statements and no corporate surety bond was provided to cover the cost of the first exploration well. Bowen later advised RSM in an April 27 letter that its application had been untimely filed. In subsequent correspondence, RSM contested this characterization and sought "amicable" resolution of the dispute. On August 31, RSM filed a Request for Arbitration of its dispute with Grenada over the denial of its license application with the ICSID tribunal.

Almost two years later, in January or February 2006, Grynberg learned from Michael Melnicke ("Melnicke"), an Ambassador of Grenada, that the defendants had a "scheme to interfere" with RSM's "exclusive contract" with Grenada to engage in natural resource exploration, development, and production by bribing Bowen and funding Grenada's legal fees and

expenses in the ICSID arbitration.[1]  Melnicke told him that "in
sum and substance . . . the cost of doing oil exploration
business in Grenada is bribing Mr. Bowen . . . ."  He also
stated that Blavatnik had bribed Bowen for access to this work,
promised him future bribes, and was helping to "cover" the cost
of Grenada's legal representation in the ICSID arbitration.
Melnicke indicated that he had met with defendants Blavatnik,
Fridman and Bowen in New York to "discuss their participation in
oil exploration and development in offshore Grenadian
territory."

     The plaintiffs filed the complaint on November 1, less than
a year later.  The complaint makes four allegations pertaining
to Blavatnik, who maintains a residence in New York and conducts
business through a Manhattan company, Access Industries.  First,
it alleges that the defendants seek to profit from the
exploration, development, and production of oil and natural gas
in Grenada, and that as a result they have "conspired to
interfere" with the Agreement and Grenada's issuance of a
license to RSM.  Second, it claims that the defendants have
"conspired to finance Grenada's legal defense" in the ICSID
arbitration of its decision not to issue a license to RSM.

---

[1] Grynberg's conversation with Melnicke is not alleged in the
complaint, but is described in Grynberg's affidavit submitted on
the instant motion.

Third, the complaint contends that Blavatnik "violated the U.S. Foreign Corrupt Practices Act, by supplying money to a Grenada Government Official, namely Minister Gregory Bowen, by promising more bribes to Defendant Bowen in the future."  Finally, it alleges that Blavatnik "is acting on his own behalf and as a surrogate for Lord Browne ([British Petroleum Company PLC ("BP")] Chief Executive) and BP, which has vast oil and natural gas production, liquefied natural gas (LNG) operations, and development across the border in Trinidad and Tobago."[2]

DISCUSSION

Blavatnik seeks dismissal of the plaintiffs' claims against him on the following four grounds: plaintiffs fail to state a claim because they 1) fail to allege sufficient facts and 2) their claims are barred by the applicable two-year statute of limitations on tort claims, 3) the principle of forum non conveniens counsels for dismissal of the action from this forum and litigation in Grenada, and 4) plaintiffs fail to join Grenada as an indispensable party.  In the event that the claims against him are not dismissed, Blavatnik seeks a stay of the instant action pending the outcome of RSM's arbitration against Grenada at the ICSID tribunal.

---

[2] According to the complaint, BP is an "international and U.S. domestic integrated oil and energy company."

6

I. Motion to Dismiss for Failure to State a Claim

Under the pleading standard set forth in Rule 8(a) of the
Federal Rules of Civil Procedure, complaints must include "a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]
plaintiff is required only to give a defendant fair notice of
what the claim is and the grounds upon which it rests."
Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).
Rule 8 is fashioned in the interest of fair and reasonable
notice, not technicality, and therefore is "not meant to impose
a great burden upon a plaintiff."  Dura Pharms., Inc. v. Broudo,
544 U.S. 336, 347 (2005).  When considering a motion to dismiss
under Rule 12(b)(6), a trial court must "accept as true all
factual statements alleged in the complaint and draw all
reasonable inferences in favor of the non-moving party."
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007) (citation omitted).  At the same time, "conclusory
allegations or legal conclusions masquerading as factual
conclusions will not suffice to defeat a motion to dismiss."
Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d
Cir. 2006) (citation omitted).  A court must apply a "flexible
'plausibility standard,' which obliges a pleader to amplify a
claim with some factual allegations in those contexts where such

amplification is needed to render the claim <u>plausible</u>."   <u>Iqbal</u>
<u>v. Hasty</u>, --- F.3d ---, 2007 WL 1717803, at *11 (2d Cir. 2007).


A. Failure to Allege Sufficient Facts to State a Claim

     Blavatnik moves to dismiss for failure to state a claim
under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)"), on the
ground that the complaint fails to allege any facts connecting
him to acts of tortious interference.  In their opposition to
the motion, plaintiffs argue that the complaint alleges the
elements of both tortious interference with business relations
and tortious interference with a contract against Blavatnik.
They also request, however, permission to amend the complaint to
cure any defects in pleading these two claims and to include a
claim for civil conspiracy against the defendants.  In light of
their request, plaintiffs are granted leave to amend the
complaint pursuant to Rule 15(a), Fed. R. Civ. P.  Rule 15(a)
permits a party to amend a pleading "by leave of court" after
the filing of a responsive pleading, and indicates that "leave
shall be freely given when justice so requires."  <u>Id.</u>


B. Statute of Limitations

     Blavatnik also moves to dismiss pursuant to Rule 12(b)(6)
on the basis that both of the claims against him are barred by
the applicable statute of limitations.  He contends that

Colorado's two-year statute of limitations for tort actions
applies to plaintiffs' claims and began to run either on April
27, 2004, the date of Bowen's letter denying as untimely
plaintiffs' license application, or August 31, 2004, the date
plaintiffs brought their claim against Grenada before the ICSID
tribunal.

    In diversity cases, "state statutes of limitations govern
the timeliness of state law claims." Schermerhorn v. Metro.
Transp. Auth., 156 F.3d 351, 354 (2d Cir. 1998) (citation
omitted).  State law also determines the "commencement of the
limitations period." Cantor Fitzgerald Inc. v. Lutnick, 313
F.3d 704, 709 (2d Cir. 2002).  "To determine which state's law
applies, a federal court sitting in diversity must apply the
conflict-of-laws rules of the state in which the federal court
sits." Id. at 710 (citing Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487, 496 (1941)).  New York applies a "borrowing
statute," N.Y. C.P.L.R. § 202 ("Section 202"), for actions filed
by a non-resident.  Cantor Fitzgerald, 313 F.3d at 710.  In such
actions, New York applies the shorter of the statute of
limitations between New York and the place where the cause of
action accrued.

> An action based upon a cause of action accruing without the
> state cannot be commenced after the expiration of the time
> limited by the laws of either the state or the place
> without the state where the cause of action accrued, except
> that where the cause of action accrued in favor of a

resident of the state the time limited by the laws of the state shall apply.

Section 202.

"New York follows the traditional definition of accrual -- a cause of action accrues at the time and in the place of the injury." <u>Cantor Fitzgerald</u>, 313 F.3d at 710 (citing <u>Global Fin. Corp. v. Triarc Corp.</u>, 715 N.E.2d 482, 485 (N.Y. 1999)).  In cases, such as this one where the plaintiff alleges only economic injuries, "the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." <u>Id.</u> (citing <u>Global Fin. Corp.</u>, 715 N.E.2d at 485).  A corporation sustains economic injury in the states where it is incorporated and has offices.  <u>See, e.g.</u>, <u>Cantor Fitgerald</u>, 313 F.3d at 710 (Nevada corporation with offices in California sustained economic injury in both states).

Since Grynberg is a Colorado resident and both Grynberg Petroleum and RSM operate in Colorado, the plaintiffs sustained their injuries in Colorado.  According to Section 202, therefore, the shorter statute of limitations for tort actions between New York and Colorado law will apply.[3]  Colorado's two-year statute of limitation for tort actions, Co. Rev. Stat. Ann.

---

[3] Although RSM is incorporated in Texas, Grynberg and his company did not sustain injuries in that state.  Neither party argues that Texas's statute of limitations for tort actions should apply.

§ 13-80-102(1), is shorter than New York's three-year statute of limitations for tort actions, N.Y. C.P.L.R. § 214.  Both parties agree that Colorado's two-year statute of limitations applies.

According to Colorado law, tort claims, including those for tortious interference with a contract and business relations, must be brought "within two years after the cause of action accrues."  Co. Rev. Stat. Ann. § 13-80-102(1).  Colorado has adopted a "discovery rule" regarding the accrual of actions. Miller v. Armstrong World Indus., Inc., 817 P.2d 111, 113 (Colo. 1991).  "[A] cause of action for injury to [a] person . . . shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  Co. Rev. Stat. Ann. § 13-80-108(1). According to the rule, a "claim for relief does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action." Miller, 817 P.2d at 113 (citation omitted) (emphasis added); see also Sandoval v. Archdiocese of Denver, 8 P.3d 598, 604 (Colo. Ct. App. 2000). In the context of tort actions, the limitation period commences when the injured party "knew or, through the exercise of reasonable diligence, should have known (or, alternatively, discovered or should have discovered), the wrongful act."

<u>Trinity Broad. of Denver, Inc. v. City of Westminster</u>, 848 P.2d
916, 923 (Colo. 1993) (emphasis added).

It was not until Grynberg's early 2006 conversation with
Melnicke that plaintiffs first learned of material facts
suggesting that Blavatnik engaged in wrongful acts actionable
under claims for tortious interference with a contract and
tortious interference with prospective business relations.
Under New York law, the elements of a claim for tortious
interference with a contract include "(1) the existence of a
valid contract between plaintiff and a third party; (2) the
defendant's knowledge of that contract; (3) the defendant's
intentional procuring of the breach, and (4) damages." <u>White
Plains Coat & Apron Co., Inc. v. Cintas Corp.</u>, 460 F.3d 281,
285 (2d Cir. 2006).  The elements of a claim for tortious
interference with prospective business relations include, "(1)
business relations with a third party; (2) the defendant's
interference with those business relations; (3) the defendant
acted with the sole purpose of harming the plaintiff or used
dishonest, unfair, or improper means; and (4) injury to the
business relationship." <u>Nadel v. Play-By-Play Toys & Novelties,
Inc.</u>, 208 F.3d 368, 382 (2d Cir. 2000).

In early 2006, Grynberg learned from Melnicke that
Blavatnik allegedly bribed Bowen, promised future bribes, and
was funding Grenada's ICSID arbitration expenses, all in an

effort to secure his own company's ability to engage in natural resource exploration, development and production in Grenada at the expense of RSM and the terms of the Agreement.  It is unreasonable to think plaintiffs should have known before that time that Blavatnik had engaged in these wrongful acts.  While plaintiffs were aware before that time that Grenada and Bowen had caused their injury, Blavatnik has failed to point to any evidence that plaintiffs should have been aware that he was also a cause of the injury.  Plaintiffs' causes of action against Blavatnik therefore accrued in January 2006 at the earliest. They filed the complaint on November 1, 2006, long before the close of the two-year statute of limitations.  The statute of limitations prong of Blavatnik's motion to dismiss for failure to state a claim is therefore denied.


II. Forum Non Conveniens

    Blavatnik argues that under the principle of forum non conveniens, the action should be dismissed in favor of litigation in Grenada because it lacks any New York nexus.  A court has broad discretion in applying the principle of forum non conveniens.  In exercising this discretion, it applies the three-step analysis described in Iragorri v. United Techs. Corp., 274 F.3d 65, 72-76 (2d Cir. 2001).

> At step one, a court determines the degree of deference
> properly accorded the plaintiff's choice of forum.  At step
> two, it considers whether the alternative forum proposed by
> the defendants is adequate to adjudicate the parties'
> dispute.  Finally, at step three, a court balances the
> private and public interests implicated in the choice of
> forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153

(2d Cir. 2005).

The degree of deference to be accorded a plaintiff's choice

of forum "moves on a sliding scale" and is correlated with the

"degree of convenience" that the choice reflects.  Id. at 154

(citation omitted).  "The more it appears that a domestic or

foreign plaintiff's choice of forum has been dictated by reasons

that the law recognizes as valid, the greater the deference that

will be given to the plaintiff's forum choice."  Id.

Conversely, the more that a plaintiff's choice of a United

States forum appears motivated by forum shopping, the less

deference that choice commands.  Id.  Factors considered in

determining whether a plaintiff's choice of forum was likely to

have been motivated by convenience include:

> [1] the convenience of the plaintiff's residence in
> relation to the chosen forum, [2] the availability of
> witnesses or evidence to the forum district, [3] the
> defendant's amenability to suit in the forum district, [4]
> the availability of appropriate legal assistance, and [5]
> other reasons relating to convenience or expense.

Id. at 155 (citing Iragorri, 274 F.3d at 72).  The Court of
Appeals has also identified factors indicative of forum
shopping:

> [1] attempts to win a tactical advantage resulting from
> local laws that favor the plaintiff's case, [2] the
> habitual generosity of juries in the United States or in
> the forum district, [3] the plaintiff's popularity or the
> defendant's unpopularity in the region, or [4] the
> inconvenience and expense to the defendant resulting from
> litigation in that forum.

Id. (citing Iragorri, 274 F.3d at 72).

A forum is generally adequate if defendants are amenable to
service of process there, but it may be inadequate if the remedy
it offers "is clearly unsatisfactory," such as where the
alternative forum "does not permit litigation of the subject
matter in dispute."  Piper Aircraft Co. v. Reyno, 454 U.S. 235,
254 n.22 (1981).  The alternative forum is not inadequate simply
because it does not afford plaintiffs the identical causes of
action or relief available in the plaintiffs' chosen forum.
Norex, 416 F.3d at 158.

Finally, in step three, a court must balance both public
and private interest factors.  Private interest factors include:

> the relative ease of access to sources of proof;
> availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of willing,
> witnesses; possibility of view of premises, if view would
> be appropriate to the action; and all other practical
> problems that make trial of a case easy, expeditious and
> inexpensive.

_Iragorri_, 274 F.3d at 73-74 (citing _Gulf Oil Corp. v. Gilbert_, 330 U.S. 501, 508 (1947)).  These factors are considered in light of the particular issues likely to be tried, including whether the plaintiff's damages are disputed and where the evidence of damages is likely to be more accessible.  _Iragorri_, 274 F.3d at 74.  In weighing these factors, a court must determine whether or not those hardships that the defendants would suffer if the case were to remain in this district outweigh the hardships the plaintiffs would suffer if the case were dismissed and the plaintiffs forced to refile in an alternative forum.  _Pollux Holding Ltd. v. Chase Manhattan Bank_, 329 F.3d 64, 75 (2d Cir. 2003).

Public interest factors include administrative inefficiency in trying a case in a busy court and away from the locus of the injury; the burden that jury duty may impose on the community if the case is tried in a venue with no connection to the issues in dispute; for cases that affect many people, the public's interest in having easy access to the trial court proceedings; a community's interest in having a local case decided at home; and, in a diversity case, the public interest in having the case decided in the jurisdiction whose law will govern the case.  _Iragorri_, 274 F.3d at 74.  An action should be dismissed on the ground of _forum non conveniens_ "only if the chosen forum is shown to be genuinely inconvenient and the selected forum

significantly preferable," taking into account the balance of private and public interests.  Id. at 74-75.


A. Deference to Plaintiffs' Choice of Forum

Applying the Iragorri convenience factors, the plaintiffs' choice of forum is entitled to substantial deference. Plaintiffs are United States residents who seek to litigate their claims in a United States district court.  Although they are not residents of this district, their choice of the Southern District of New York is nevertheless entitled to deference. "The benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides, especially considering that the defendant may not be amenable to suit in the plaintiff's district of residence."  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 103 (2d Cir. 2000); see also Norex, 416 F.3d at 155-56.  Thus, filing suit outside of plaintiffs' own district does not deprive that choice of deference "to the extent that it was motivated by legitimate reasons."  Iragorri, 274 F.3d at 73.

The plaintiffs have shown that their choice of this district was motivated by legitimate concerns.  First is the location of this defendant, who is a New York resident. Blavatnik cannot and has not argued that he would be personally inconvenienced by litigation of this action in his home forum.

17

Moreover, while plaintiffs' choice of the "defendant's home
forum will not, by itself, warrant a presumption of convenience
. . . , when such a choice is made to obtain jurisdiction over
defendant, . . . substantial deference would still be generally
appropriate." Norex, 416 F.3d at 155-56 (citation omitted).
Second and even more significantly, Blavatnik does not disagree
with the plaintiffs' argument that three of the four defendants
are not amenable to suit in Grenada.[4]  Third, while Blavatnik
claims that relevant witnesses are located in Grenada,
plaintiffs point out that several witnesses are located in the
United States, including Melnicke and another witness, Timothy
Bass.  The convenience of the plaintiffs' residence in relation
to the chosen forum, their inability to sue three defendants in
Grenada, and Blavatnik's residence in this district all weigh in
favor of granting substantial deference to plaintiffs' choice of
forum.


B. Grenada is Not an Adequate Forum

     Blavatnik has failed, moreover, to demonstrate that Grenada
will provide an adequate alternative forum in light of the fact
that three of four defendants do not appear to be amenable to

---

[4] Each of the defendants, when served by plaintiffs, has filed a
motion to dismiss.  This Opinion does not consider the merits of
these other motions.

service in that country.  This failure suggests that Blavatnik's motion to dismiss on <u>forum non conveniens</u> grounds is motivated by forum shopping.[5]

## C. Balance of Factors

In light of the lack of an adequate alternative forum, the balance of private and public interest factors need be discussed only briefly.  Public interest factors such as the likelihood that Grenada's tort law will apply to plantiffs' claims and the compelling public interest of Grenada in adjudicating disputes arising from accusations of corruption against one of its public officials weigh in favor of dismissal.  New York too has some interest in this case, however, which accuses a New York

---

[5] Plaintiffs' argument that Grenada is an inadequate alternate forum because of its "well-deserved reputation for corruption" fails.  For the Court to find an alternative forum inadequate on that basis, a plaintiff should show that "the alternative forum is characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties."  <u>In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine</u>, 311 F.3d 488, 499 (2d Cir. 2002).  "[C]onclusory submissions" and "sweeping generalizations" about the alternative forum's legal system do not establish the forum is inadequate for purposes of a <u>forum non conveniens</u> analysis.  <u>Id.</u>; <u>see, e.g.</u>, <u>Esheva v. Siberia Airlines</u>, No. 06 Civ. 11347, 13409 (DLC), 2007 WL 1879179, at *4-5 (S.D.N.Y. June 28, 2007) (rejecting argument for dismissal on <u>forum non conveniens</u> grounds due to alleged corruption of Russian courts).  Plaintiffs' claim that Grynberg has "a legitimate concern over his personal safety" in Grenada and that the safety of witnesses providing information on the issue of government corruption are similarly unsupported, and do not counsel for dismissal of the instant action on <u>forum non conveniens</u> grounds.

19

resident of meeting with other defendants in New York to bribe a foreign official.

More importantly, private interest factors favor retaining the case. While some of the relevant evidence may be located in Grenada, evidence as to the defendants' allegedly conspiratorial actions may in fact be located in this district where defendant Blavatnik resides and where Grynberg alleges defendants have met. The convenience to the plaintiffs, the amenability of some of the defendants to suit here, and the convenience to Blavatnik of litigating this action where he resides, all favor retention. Balancing the public and private interests at stake, Blavatnik has failed to demonstrate that the Southern District is "genuinely inconvenient" and that Grenada is "significantly preferable." <u>Iragorri</u>, 274 F.3d at 74-75. Blavatnik's motion to dismiss pursuant to the principle of <u>forum non conveniens</u> is denied.


III. Request for Stay

While this Court has discretion to stay the instant litigation pending resolution of the ICSID arbitration, a stay is not warranted. The allegations against the defendants for tortious interference with the purported contract and tortious interference with business relations may be litigated and

20

resolved in this forum without disturbing the resolution of

RSM's claims against Grenada by the ICSID tribunal.


CONCLUSION

Blavatnik's motion to dismiss for failure to state a claim

is denied with leave to renew following amendment of the

complaint, insofar as this motion is based on plaintiffs'

failure to plead sufficient factual allegations to state a claim

against the defendant.  The motion to dismiss for failure to

state a claim on the grounds of statute of limitations is

denied.  The motions to dismiss on the grounds of forum non

conveniens and for a stay of the litigation pending resolution

of RSM's claims before the ICSID tribunal are denied.

Plaintiffs are granted leave to file an amended complaint

no later than August 24.  Blavatnik's motion to dismiss for

failure to join an indispensable party is denied without

prejudice to its renewal after each defendant's motion to

dismiss is resolved.


SO ORDERED:

Dated:    New York, New York
          August 10, 2007

                                      _____
                                         DENISE COTE
                                      United States District Judge

21